UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:19-CR-00026-JHM**

**UNITED STATES OF AMERICA**                                                                                     **PLAINTIFF**

**V.**

**STEVE TURNER**                                                                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Steve Turner's Motion to Dismiss Counts One, Two, Five, Six, and Seven of the Indictment. [DN 22]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's motion is **DENIED IN PART** and **GRANTED IN PART**.

### I. BACKGROUND

According to the Indictment, Defendant Steve Turner ("Defendant") is the owner of Corrosion Monitoring Services, a company that inspects and repairs tubular air heater systems in electrical power plants. [DN 1 ¶¶ 1–2]. The Indictment alleges that Defendant concocted a scheme to defraud the power plants by damaging air heater systems while conducting inspections, concealing his role in the damage, and then charging the power plants to repair the damage. [*Id.* at ¶¶ 2–6].

The Indictment charges two counts of wire fraud and one count of conspiracy to damage power facilities. 18 U.S.C. §§ 1343, 1366.[1] The Indictment also charges four counts of obstruction of justice, in violation of 18 U.S.C. §§ 1505, 1512(c)(2), and 1513(e), relating to Defendant's threatening statements and retaliatory measures against his employees who cooperated with a Tennessee Valley Authority ("TVA") Inspector General investigation of the

---

[1] The Indictment also charges Defendant under 18 U.S.C. § 2 for the aiding and abetting theory of liability.

allegations. [DN 1 ¶¶ 7–10]. Defendant moves to dismiss the wire fraud counts (Counts One and Two) and three of the obstruction of justice counts (Counts Five, Six, and Seven) for failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v).

## II. STANDARD OF REVIEW

For a court to grant a motion to dismiss an indictment for failure to state an offense, it must find that the conduct alleged in the indictment does not satisfy every element of the charged offense. FED. R. CRIM. P. 12(b)(3)(B)(v); *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019). Conversely, an indictment is sufficient if it lays out the elements of the charged offense and "fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). When reviewing the indictment, the court must accept factual allegations as true and must "determine only whether the indictment is valid on its face." *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996); *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) (internal quotations omitted). Thus, a Rule 12(b)(3)(B)(v) motion must only raise questions of law. *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009).

## III. DISCUSSION

### A. Counts One and Two – Wire Fraud – 18 U.S.C. § 1343

Counts One and Two of the Indictment allege wire fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. There are three elements to the substantive offense of wire fraud: "(1) the existence of a scheme to defraud, (2) use of wire communications in furtherance of the scheme, and (3) that the scheme was intended to deprive a victim of money and property." *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994).

Defendant moves to dismiss these charges because, he claims, the Indictment does not allege he intended to deprive power plant owners of money or property (the third element of the

offense). [DN 22-1 at 5–6]. In support of this argument, Defendant cites *United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014). In *Sadler*, a pharmacy owner was convicted of wire fraud for ordering pills using fake names. *Id*. at 590. The government theory was that the defendant intentionally deprived the pharmaceutical distributors of pills. *Id*. The Sixth Circuit reversed the conviction, finding that the distributors were not "deprived" of pills because the defendant paid full price. *Id*. Here, Defendant claims his Indictment fails because, just as the *Sadler* defendant paid fair price for the pills, he charged fair price for actual repair services provided to the power plants.

Defendant's argument fails because it ignores the first part of the Government's charged conduct—the scheme to damage the air heaters. The full scheme alleged by the Government is that Defendant (1) intentionally damaged the air heaters, (2) did not inform the facilities that he caused the damage, and (3) submitted proposals to fix the air heaters. Defendant intended to deprive the victims of money because he wrongfully created the need in the first instance, then charged the victims to fix the need. The price was fair, but the situation never arises but for Defendant's wrongful act.

The Indictment ably alleges all elements of a wire fraud offense—it specifies that (1) Defendant devised a scheme to defraud power plants by damaging air heaters [DN 1 at 2 ¶ 2], (2) used an interstate wire communication (email) in furtherance of the scheme [*id*. at 2–3 ¶ 5], and (3) the scheme was intended to defraud the power plants of money or property. [*Id*. at 1–2 ¶ 1]; *see Merklinger*, 16 F.3d at 678. Defendant's motion to dismiss Counts One and Two is **DENIED**.

**B. Counts Five and Six – Obstruction of Justice – 18 U.S.C. § 1512(c)(2)**

Next, Defendant moves to dismiss Counts Five and Six of the Indictment—obstruction of justice under 18 U.S.C. § 1512(c)(2). Both counts allege Defendant obstructed an "official proceeding" when he threatened employees who cooperated with the TVA Inspector General investigation. [DN 1 ¶¶ 8–9]. The statutory provision states:

> Whoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c)(2). An "official proceeding" is defined in part as "a proceeding before a judge or court of the United States, a United States magistrate judge, . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). Defendant argues a federal law enforcement investigation is not an "official proceeding," so § 1512(c)(2) does not state an offense. [DN 22-1 at 8].

Defendant is correct that a law enforcement investigation, such as the TVA Inspector General investigation, is not an "official proceeding." *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) ("An 'official proceeding' includes a grand jury investigation, but not an FBI investigation."). The Government's response brief, however, argues that the grand jury proceedings (not the TVA Inspector General investigation) is the basis for the § 1512(c)(2) obstruction charges. The Government does not claim the grand jury proceedings had already started when the Defendant committed the relevant acts—instead, the Government appears to argue the grand jury proceedings were "foreseeable" to the Defendant, which is all that § 1512(c)(2) requires. [DN 31 at 8]. This argument raises two related issues. First, does § 1512(c)(2) extend to obstruction of "foreseeable," but not yet initiated, grand jury proceedings? And second, if so, was the Government required to allege foreseeability in the Indictment?

4

*Foreseeability*.   Section 1512(c)(2) covers some offenses committed before the commencement of an "official proceeding."  *See* § 1512(f)(1) ("[A]n official proceeding need not be pending or about to be instituted at the time of the offense . . . ."). These pre-proceeding offenses satisfy § 1512(c)(2) if two requirements are met.  First, there must be a nexus requirement—the obstructive conduct must relate to a specific official proceeding. *See United States v. Aguilar*, 515 U.S. 593, 600–02 (1995) (holding that an obstruction of justice conviction under 18 U.S.C. § 1503 required the government to prove a defendant knew his false statement, given to FBI agents, would be provided to the grand jury); *Young*, 916 F.3d at 386 (applying *Aguilar*'s nexus requirement to a § 1512(c)(2) conviction); *United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015) (same); *United States v. Tyler*, 732 F.3d 241, 249–50 (3d Cir. 2013) (same); *United States v. Bennett*, 664 F.3d 997, 1013 (5th Cir. 2011), *vacated on other grounds*, 567 U.S. 950 (2012) (same); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (assuming without deciding that *Aguilar*'s nexus requirement applied to § 1512(c)(2)).  Second, the specific official proceeding must be reasonably foreseeable to the defendant when the obstructive conduct occurs. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707–08 (2005) (holding that a § 1512(b)(2)(A) conviction, based on pre-proceeding obstruction, required the specific proceeding to be reasonably foreseeable to the defendant); *Young*, 916 F.3d at 386 (applying the reasonable foreseeability requirement to § 1512(c)(2)); *Petruk*, 781 F.3d at 445 (same); *Tyler*, 732 F.3d at 249–50 (same).

*Indictment Allegations*.   Defendant argues the Indictment fails even if § 1512(c)(2) governs "foreseeable" grand jury proceedings, because the Government did not allege foreseeability in the Indictment.  This argument fails.  As several courts have recognized, "the nexus need not be alleged or established in the indictment." *United States v. Suarez*, No. 5:13-

cr-420, 2014 WL 1898995, at *4 (N.D. Ohio May 8, 2014) (collecting cases). While the Government must prove nexus and foreseeability to obtain a conviction, it is not required at this stage. The Indictment correctly tracks the statutory elements and fairly informs Defendant of the charges against him. Defendant's motion to dismiss Counts Five and Six is **DENIED**.

### C. Count Seven – Obstruction of Justice – 18 U.S.C. § 1505

Lastly, Defendant moves to dismiss Count Seven of the Indictment. The Indictment alleges that

> On or about June 11, 2016 . . . the defendant, STEVE TURNER, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, and any applicable combination, the due and proper administration of the law under which a pending proceeding was being had before the TVA OIG and the United States Attorney's Office of the Department of Justice, and the federal Grand Jury of the Western District of Kentucky, to wit: STEVE TURNER emailed CMS employee 1 threatening to expose his text messages and photographs maintained on CMS's server because he believed employee 1 had provided information relating to the commission and possible commission of a crime to TVA OIG.
> In violation of Title 18, United States Code, Section 1505.

[DN 1 at 5–6 ¶ 10]. The relevant language of § 1505 states:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication . . . endeavors to influence, obstruct, or impede the due and proper administration of the law under which any *pending proceeding is being had before any department or agency of the United States* . . . [s]hall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1505 (emphasis added).

Defendant moves to dismiss this count because a TVA Inspector General investigation is not a "pending proceeding" under § 1505. Specifically, Defendant argues that the word "proceeding" refers only to regulatory or rulemaking functions of an agency, not (as was the case here) a criminal investigation by an agency's Inspector General. [DN 22 at 8].

6


Two in-circuit decisions guide the Court's resolution of this issue. First, in *United States v. Fruchtman*, 421 F.2d 1019 (6th Cir. 1970), the Sixth Circuit held that obstruction of a Federal Trade Commission investigation into Clayton Act violations was obstruction of a "proceeding" under § 1505. *Id*. at 1021. The court rejected a distinction between investigations and adjudications—it found that a § 1505 "proceeding" encompasses "both the investigative and adjudicative functions of a department or agency." *Id*.

Second, eleven years after *Fruchtman*, a court in this district held that an FBI investigation was not a § 1505 "proceeding." *United States v. Higgins*, 511 F. Supp. 453, 456 (W.D. Ky. 1981). Differentiating *Fruchtman*, the court found that the FBI solely is a criminal investigatory agency with "no power to engage in rulemaking or adjudication." *Id*. at 455. It held that a § 1505 "proceeding" is limited to actions relating to "the rulemaking or adjudicative power vested in the agency by law." *Id*. Since the FBI has no rulemaking or adjudicative power, obstruction of its investigatory actions could not serve as a § 1505 predicate. *Id*. at 455–56.

The Government argues that *Fruchtman* is dispositive, but the Court does not agree. The question in *Fruchtman* was whether § 1505 liability hinges on the investigation vs. adjudication stage of proceedings—*Fruchtman* clearly answered that it does not. *Fruchtman*, 421 F.2d at 1021. It stands for the proposition that a "pending proceeding" under § 1505 includes the investigative, adjudicatory, and rulemaking stages of an agency proceeding. *Id*.; *see also United States v. Browning, Inc.*, 572 F.2d 720, 723–24 (10th Cir. 1978) (investigation by Customs Commission was a "proceeding"); *Rice v. United States*, 356 F.2d 709, 712–13 (8th Cir. 1966) (NLRB investigation was a "proceeding" even though no formal complaint had been filed).

What *Fruchtman* does not answer, however, is whether an investigation by an agency without adjudicative authority can support § 1505 liability. *Higgins* answers that question in the

7

negative—a federal investigation by an agency *without* adjudicative or rulemaking power is not a "pending proceeding" because there is no possibility of an agency "proceeding" to follow the investigation. *Higgins*, 511 F. Supp. at 455–56. Whereas *Fruchtman* proceeded under the assumption that the result of the investigation would be an agency adjudication, that assumption does not hold for an agency without adjudication powers. Investigations by these agencies essentially are "mere police investigation," which is not actionable under § 1505. *Id.*; *see United States v. Wright*, 704 F. Supp. 613, 614–15 (D. Md. 1989) (following *Higgins* and stating that "the agency to which the false information is submitted must be one with rule-making or adjudicative authority before a § 1505 offense can occur"); *United States v. Batten*, 226 F. Supp. 492, 494 (D.D.C. 1964) (using the phrase "mere police investigation" to describe conduct not covered by § 1505).

The question then becomes whether the TVA possesses adjudicative or rulemaking power?[2] It does not. The Government does not argue that it does, nor do the enabling statutes or regulations suggest any adjudicative[3] or rulemaking[4] powers. *See* Tennessee Valley Authority Act, 16 U.S.C. §§ 831–831ee; 18 C.F.R. §§ 1300–1318. Since the TVA lacks any adjudicative or rulemaking power, there is no possible way that the Inspector General investigation into

---

[2] *United States v. Edgemon* distinguished the TVA Inspector General from the TVA for this analysis because the Inspector General has criminal investigative responsibilities and only nominally reports to the head of the TVA. No. 3:95-cr-43, 1997 U.S. Dist. LEXIS 23820, at *15 (E.D. Tenn. Aug. 18, 1997) ("[The Inspector General] is a separate and independent department or unit from that of TVA."). The Court does not disagree with that conclusion—Inspectors General have a unique role that may warrant distinguishing them from the agencies they serve. *See* Graham Hughes, *Administrative Subpoenas and the Grand Jury: Converging Streams of Criminal and Civil Compulsory Process*, 47 VAND. L. REV. 573, 600 (1994) ("The Inspector General's undisputed power to inquire into criminal acts and to issue subpoenas to parties who have no direct relationship with the department or agency facilitates the unification of civil and criminal compulsory process."). The Court need not address this issue, however, because the TVA as a whole lacks adjudicative or rulemaking power.

[3] The TVA's governing regulations do provide limited agency adjudication procedures for contract disputes, pursuant to the Contract Disputes Act of 1978. *See* 18 C.F.R. §§ 1308.1–.39. But this adjudicative power is limited to contracts containing a disputes clause, *see* § 1308.3, a situation not at issue here.

[4] A regulation titled "Notice-and-comment procedures" describes how "significant guidance document[s]" must undergo "informal notice-and-comment procedures." 18 C.F.R. § 1301.76. But the regulations never mention formal notice-and-comment rulemaking procedures.

Defendant would result in an *agency* proceeding. Any proceeding would necessarily be external—in all likelihood, a federal law enforcement proceeding. Since the Inspector General investigation could not result in an agency proceeding, Defendant's obstruction falls outside the scope of § 1505.

The language in the Indictment confirms this conclusion. Count Seven discusses the "pending proceeding being had before the TVA OIG and the United States Attorney's Office of the Department of Justice." [DN 1 at 5 ¶ 10]. This sentence confirms that the Inspector General was working in concert with the U.S. Attorney to pursue criminal charges. Functionally, the Inspector General's role here was precisely the same as the FBI's role in *Higgins*, a case in which this court rejected § 1505 liability. *See Higgins*, 511 F. Supp. at 455–56. The Inspector General was engaged in "mere police investigation," and police investigations are not "pending proceedings" under § 1505. *Batten*, 226 F. Supp. at 494.

In a last-ditch effort, the Government argues that even though the TVA lacks adjudicatory or rulemaking power, any agency with subpoena or warrant power (including the TVA Inspector General) falls within § 1505. In support, it cites *United States v. Kelley*, which held that an investigation by the Agency for International Development ("AID") Inspector General was a "pending proceeding." 36 F.3d 1118, 1127 (D.C. Cir. 1994). But *Kelley* took care to differentiate the AID investigation from "mere police investigation," which it recognized was not a § 1505 proceeding. *Id.*; *see also United States v. Pac. Gas & Elec. Co.*, 153 F. Supp. 3d 1076, 1081 (N.D. Cal. 2015) (stating that a National Transportation Safety Board investigation was a § 1505 proceeding even though the agency lacked adjudicative or rulemaking authority because the investigation was a regulatory, not criminal, investigation). Comparatively, the Government asks this Court to abolish that distinction. The Government's

expansive argument would turn obstruction of criminal investigations into a § 1505 offense—a result Congress did not intend. H.R. Rep. No. 90-658, at 1760 (1967) ("[A]ttempts to obstruct a criminal investigation . . . are not within the proscription of [§ 1505]."). Subpoena and warrant power is closely associated with criminal investigation. Section 1505 simply does not apply to the situation here—a criminal investigation divorced from any prospective agency adjudication.

Defendant's motion to dismiss Count Seven is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Counts One, Two, Five, Six, and Seven of the Indictment [DN 22] is **DENIED IN PART** and **GRANTED IN PART**. Count Seven of the Indictment is dismissed.

Joseph H. McKinley Jr., Senior Judge
United States District Court

December 16, 2020

cc:   Counsel of Record