UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                                            CRIMINAL ACTION NO. 4:19-CR-00026-JHM

STEVE TURNER                                                                           DEFENDANT

## UNITED STATES' SENTENCING MEMORANDUM

*Electronically Filed*

The United States submits this sentencing memorandum. The United States is requesting the court sentence the defendant, Steve Turner ("Turner") consistent with the plea agreement to a sentence of 6 months incarceration to be followed by supervised release of one year with a special condition of 6 months' home detention. The United States will request a fine of $150,000. In addition, Turner should be ordered to pay restitution in the amount of the stipulated loss of $247,427.72.

   I.   **SUMMARY OF OFFENSE CONDUCT**

The United States agrees with the offense conduct contained within the Presentence Investigative Report ("PSR") [DN 99]. The Court is familiar with the matter through the numerous court filings.

   II.  **SENTENCING GUIDELINES AND CRIMINAL HISTORY**

The United States agrees that the guidelines in the PSR are correct. The sentence contained within the Plea Agreement [DN 96] of 6 months incarceration to be followed by supervised release of one year with a special condition of home detention for 6 months is within the guidelines range

of 10 to 16 months in Zone C of the Sentencing Table.

### III. 18 U.S.C. SECTION 3553(a) FACTORS

The sentencing factors in 18 U.S.C. § 3553(a) support a sentence of incarceration. Turner should be sentenced to six months incarceration to be followed by supervised release of one year with a special condition of home detention for six months. Turner had been in the air heater industry his whole career and participated in damaging the facility he was hired to inspect and repair. It is without question, there are non-destructive techniques in the industry to properly test the integrity of the tubes at the facility. It is also without question that Turner should have immediately reported and repaired the damages to the facility. He did neither. The only explanation as to why Turner failed to reveal the extensive damage caused by his employee to the tubes and the 20 or so tubes Turner personally punctured (according to his statement), was that damage was not part of real inspection. With Turner's other motives aside, he was planting seeds for future repairs in the facility he wished to be paid to repair. The agreed loss amount that Turner recognized he caused in the case is significant at $247,427.72. The nature and circumstances of an offense are rendered even more egregious because of Turner's experience in the industry. He knew better.

Unfortunately, Turner's behavior escalated beyond the underlying offense to additional attempts to obstruct justice. Turner's behavior only escalated once his criminal activity was brought to light. Turner obstructed justice with a cooperating witness in a consensually monitored phone call and by retaliating against a family member of that witness. The impact on TVA was a financial crime but Turner's obstructive behavior was a crime against the integrity of the judicial system.

The need for punishment to deter Turner and others like him would be served by a sentence with some jail time and a fine. The nature and circumstances of the offense were egregious. Turner was in the air heater business his whole career and had to know the use of the fireman's axe and his intentional failure to report damages was so far out of the norm for inspections and proper industry conduct. Turner also caused a significant amount of damage and failed to report it. When caught, he attempted to intimidate a witness and obstruct justice – including taking away the health care benefits from the spouse of an employee who reported Turner's conduct.

The requested sentence of 6 months' incarceration to be followed by supervised release of one year with a special condition of 6 months home detention, payment of a fine, and payment of restitution fits squarely within the guideline requirements and furthermore, it strikes the appropriate balance of punishing Turner for his serious crimes and indicates the seriousness with which such crimes are viewed.

The 3553(a) factors clearly support a sentence of 6 months' incarceration to be followed by supervised release of one year with a special condition of 6 months' home detention.

### IV.     FINE

The fine range in the case is between $5,500 to $55,000. The maximum fine per count is $250,000. Based on the guideline range, the United States recommends a fine of $50,000 for each count for a total of $150,000. Turner has the ability to pay and should be punished for his behavior.

### V.     RESTITUTION

Turner should pay restitution in the amount of $247,427.72- the amount of loss he agreed he caused. In his plea agreement, Turner stipulated to a loss amount of $247,427.72, agreed that restitution was going to be determined at sentencing, and agreed that the "amount of restitution

ordered by the Court shall include Defendant's total offense conduct, and is not limited to the counts of conviction." *See* Plea Agreement [DN 96]. Now, Turner argues, even after agreeing that he caused a significant $247,427.72 loss (which he now claims is overstated), he should not have to pay restitution.

This argument misses the mark legally since restitution is mandatory in this case under the provisions of the Mandatory Victim Restitution Act (MVRA) of 1996. *See* 18 U.S.C. §3663A *et seq.* Paragraph 1 of 18 U.S.C. § 3663A(c) contains a listing of offenses to which the MVRA applies, including "(ii) an offense against property under this title [Title 18]." 3663A(c)(2) of the MVRA recognizes that "in the case of a plea agreement that does not result in a conviction for an offense described in paragraph (1), this section shall apply only if the plea specifically states than an offense listed under such paragraph ***gave rise to the plea agreement***." *See* 18 U.S.C. § 3663(A)(c)(2) (emphasis supplied). Turner was originally indicted with an offense against property under Title 18 since he was charged with a conspiracy to damage power facilities in violation of Title 18 U.S.C. § 1366. *See* Indictment [DN 1]. Ultimately, he did not plead guilty to this charge, which carried mandatory restitution, and the dismissal of such charge by the United States at sentencing, gave rise to his Plea Agreement in which he specifically stated that "the amount of restitution ordered by the Court shall include Defendant's total offense conduct, and is not limited to the counts of conviction." *See* Plea Agreement [DN 96] at ¶ 9. In other words, Turner plead guilty knowing that the Court would order restitution based upon the total offense conduct, including conduct related to dismissed counts that would otherwise give rise to mandatory restitution, and not just the counts of conviction. This is an instance specifically contemplated for under 3663A(c)(2) and authorizes the court to order mandatory restitution to the Tennessee Valley

4

Authority in the amount of $247,427.72

Turner's argument regarding also misses the mark factually since, in addition to already agreeing in the Plea Agreement that he caused a $247,427.72 loss, Turner proximately caused the damage to the air heater tubes since he failed to report his employee who he knew was hitting the tubes with a fireman's axe (or the tubes Turner damaged himself). *See* Presentence Investigation Report [DN 103] at ¶¶ 17, 20. Under the MVRA, a "victim" is a person "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(1). USPO recognizes that the identifiable victim in this case is the Tennessee Valley Authority. *Id*. at ¶ 22. Moreover, there is clearly a causal link between Turner's conduct and the admitted loss to TVA. Without Turner failing to notify anyone, the damage to the air heater tubes would not have occurred. Additionally, Turner's argument that the tubes would have needed replacing anyway ignores the purpose of restitution. "Restitution ordered as part of a criminal sentence is punitive." *U.S. v. Sizemore*, 850 F.3d 821, 829 (6th Cir. 2017) (internal quotations and citations omitted). The punitive aspect is meant to have both deterrent and rehabilitative effects, beyond just compensating the victim. *Kelly v. Robinson*, 479 U.S. 36, 52 (1986).

Even if the Court were to find that restitution in this case was not mandatory under the MVRA, it should nonetheless in its discretionary power, order Turner to pay the identifiable victim Tennessee Valley Authority $247,427.72 – a loss amount Turner admitted he caused and which the Court needs no further proof of.

## VI.   CONCLUSION

For the reasons set forth above and consistent with the parties' Plea Agreement, the United

States is requesting the court sentence Turner to a sentence of 6 months' incarceration to be followed by supervised release of one year with a special condition of 6 months' home detention. Turner should be ordered to pay a fine of $150,000. Turner should also be ordered to pay restitution in the amount of the stipulated loss of $247,427.72.

Respectfully submitted,

MICHAEL A. BENNETT
Acting United States Attorney

 s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
PH:  (502) 582-5911

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for Parker.

s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney